IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LEWIS GALE THORP | Cause No. CV 17-122-BLG-SPW-TJC |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DOUGLAS FENDER, ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

On September 18, 2017, Petitioner Lewis Gale Thorp filed this action under 28 U.S.C. § 2254.  Thorp is a state prisoner proceeding pro se.  Following a jury trial in January 2009, Thorp was convicted of Sexual Intercourse without Consent in Montana's Sixteenth Judicial District Court, Custer County.  Thorp seeks to challenge his 2009 conviction.

## I.    Background

Thorpe previously filed a federal habeas petition challenging the same 2009 conviction.  Thorp's petition was denied by this Court on its merits.  *Thorp v. Frink*, No. CV-12-60-BLG-SHE-CSO (D. Mont. Judg. Entered Aug. 16, 2013). When addressing his prior petition, this Court set out in detail the facts underlying Thorp's criminal case and the procedural history following his conviction.  *See*,

1

*Thorp v. Frink*, No. CV-12-60-BLG-SEH-CSO, Find. & Rec. (Doc. 19 at 2-11.)

Those facts will not be repeated here.

In his present petition, Thorp asserts his actual innocence and alleges: the prosecution committed *Brady* violations by withholding and/or altering text messages presented at trial; that the victim has made numerous recantations; and that he had a dying declaration to support his claim of innocence. (Doc. 1 at 2-5.) Thorp was subsequently ordered to provide the Court with additional information relating to the claims he was attempting to advance. (Doc. 4.)

Specifically, Thorp was directed to describe the evidence he believes to have been altered or withheld, and explain how the information would have been favorable to his defense or would have established his innocence. (Doc. 4 at 3-4.) Thorp was also asked to explain when he learned of this information. *Id*. at 4. Thorp was also ordered to explain the timing, circumstance, context, and to whom the victim made each alleged recantation. *Id*. Thorp was also directed to provide the same factual details surrounding the dying declaration he claimed demonstrated his innocence. *Id*. Thorp timely responded to this Court's Order. (Docs. 5; 5-1.)

## II.   Thorp's Response

In his response, Thorp set out additional claims, to include the following purported *Brady* and/or constitutional violations:

1. **Text Messages**.  Thorp claims that a text message exchange that occurred

2

between he and his brother, Dean Thorp, which was subsequently recovered

by law enforcement officers from Dean's phone, was printed out of order

and some of the messages were omitted.  (Doc. 5 at 1.)  Apparently, Thorp

believes an incomplete picture was presented to the jury at trial.  *Id.*

2. **Phone Records**.  Thorp claims he did not receive phone records that were

   ordered to be produced by the trial court on January 8, 2008.  *Id*. at 2.

3. **Inconsistent Testimony of Barbara Natwick**.  Thorp claims County

   Attorney Wyatt Glade allowed Barbara Natwick to take the stand at trial and

   testify inconsistently with prior her prior statements.  (Doc. 5 at 2.)  This was

   after: i) Glade had received a letter from Natwick, dated January 20, 2008,

   where she expressed her belief in Thorp's innocence, and explained

   observations she had made about the victim's behavior around Thorp in the

   time frame after the sexual assault was alleged to have occurred (*id*); ii)

   Natwick testified at a bond reduction hearing that she had no knowledge of

   Thorp confessing to the crime (*id*); iii) Glade received a letter from Natwick,

   dated February 28, 2008, where she explained the reasons why the crime

   could not have happened as alleged (*id*); iv) Natwick testified she was not

   offered anything in exchange for her testimony when records show criminal

   charges were, in fact, dismissed by the prosecution (*id*.); v) dismissal of

   criminal charges against her, and Natwick changed her story and told

3

investigators she believed Thorp to be guilty of the crime.  *Id*. at 3.

4.  **Inconsistent Testimony of M.A**.  Thorp claims to have several people that would testify M.A. told them during 2006-2007 that Thorp was her favorite uncle.  *Id*. at 3.  One of these individuals, Elain Jones, advised Thorp of such a statement in a letter dated August 19, 2009.  *Id*.

5.  **Recantation of Jordona England**.  Thorp claims that despite testifying at trial that Thorp admitted M.A. performed oral sex on him, Jordona England would now be willing to come forward and state that her mother, Barbara Natwick, coerced her into making that statement.  *Id*. at 3.

6.  **Hearsay Statements**.  Thorp alleges the further inconsistencies included "numerous instances of hearsay evidence presented" at trial.  *Id*.

7.  **New Evidence-Medical Records**.  Thorp claims he has newly obtained medical records, detailing a fall he sustained in September 2005 and subsequent complications he suffered.  Thorp asserts these records show his injuries and the type of medications he was taking "would have made this crime almost impossible to have been committed by me."  *Id*.

## III.   Analysis

Despite being provided the opportunity to do so, Thorp has not provided this Court with any new information to support his claim that M.A. has "recanted on numerous occasions," or that she made up her allegations in an effort to see

retribution against Thorp, see, (doc. 1 at 2-3). Thorp has also not provided any additional facts about an alleged dying declaration. *Id*. at 5.

Further, as will be discussed in greater detail below, it appears that all of the claims Thorp has advanced herein, with the possible exception of the claim related to Jordona England's recantation, are barred by AEDPA's restriction on second or successive petitions. Thorp either did raise these claims, or could have raised them, in the petition he previously filed with this Court.

Finally, with respect to Jordona England's alleged recantation, Thorp has not explained when he discovered England's recantation, or demonstrated that the claim, if proven, would establish that no reasonable factfinder would have found Thorp guilty of the underlying offense. The claim should, therefore, be dismissed. But even if this Court were to determine this claim was potentially meritorious, Thorp would still need leave from the Ninth Circuit Court of Appeals to file a second or successive petition. In either case, this Court lacks jurisdiction to hear Thorp's claim.

### i.    Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth strict restrictions on second or successive habeas petitions, and curtails repeated filings in which a petitioner seeks to attack the underlying conviction. AEDPA directs this Court to dismiss any claim "presented in a second or successive habeas

corpus application" that the petitioner "presented in a prior application."  28 U.S.C.

§2244(b)(1).  In addition, any new claim in a second or successive habeas corpus

application must also be dismissed unless one of two exceptions applies:

> (A) The applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id*. §2244(b)(2)(A)-(B)(ii).  Even if one of these exceptions apply, however, the

section further mandates that "[b]efore a second or successive application

permitted by this section is filed in the district court, the applicant shall move in

the appropriate court of appeals for an order authorizing the district court to

consider the application."  *Id*. §2244(b)(3)(A).

It is undisputed that Thorp did not seek leave from the Ninth Circuit to file

the present petition.

### ii.  Claims raised in prior petition

All of the claims advanced by Thorp relative to the inconsistent testimony of

Barbara Natwick, the inconsistent testimony of M.A., and the inconsistent hearsay

testimony were addressed in Thorp's prior federal habeas petition.  See e.g., *Thorp*

*v. Frink*, No. CV-12-60-BLG-SEH-CSO, Findings and Rec. (Doc. 19 at 17-18)(recommending denial of all of Thorp's claims of inconsistent witness testimony on the merits); see also, (Doc. 25)(adopting the Findings and Recommendation in full).

Similarly, Thorp's claim relative to the purported helpful information that could be provided by Elain Jones was referenced in Thorp's prior petition, and the same excerpt of the letter Ms. Jones sent to Thorp was previously lodged with the Court.  See, *Thorp v. Frink*, No. CV-12-60-BLG-SEH-CSO (Docs. 10-2 at 7; 10-3 at 135-137).  Additionally, Thorp's claim that he advised trial counsel of other potential favorable witnesses testimony was also raised in his prior petition.  (Doc. 10-2 at 9).

Finally, all of Thorp's claims relative to Barbara Natwick, and the prosecution's alleged preferential treatment of her, were raised in his prior petition. For example, the claim that Natwick was "flipped" by the prosecution, that she provided a shifting account of events, and provided information in letters and at Thorp's bond hearing which she later contradicted, were all raised previously.  See, *Thorp v. Frink*, No. CV-12-60-BLG-SEH-CSO (Docs. 10-1 at 5; 10-2 at 3-4, 8). Thorp also previously submitted the transcript from Natwick's 2008 interview to the Court (doc. 10-3 at 125-27), Natwick's January 20, 2008 letter (doc. 10-3 at 128-29), Natwick's letter to Prosecutor Glade (doc. 10-3 at 130-32), and Natwick's

March 28, 2008 letter. (Doc. 10-3 at 133-34.)  Additionally, the Miles City City

Court documents relative to Natwick were also previously provided to this Court

(Doc. 10-3 at 147-48); and Thorp's related claim that the prosecution committed a

Brady violation by not turning over evidence pertaining to the dismissal of the City

Court charges was addressed in Thorp's prior petition and ultimately denied on the

merits.  (Docs. 19 at 19-20; 25).

Because these claims were all presented in Thorp's prior petition, they

should be dismissed pursuant to 28 U.S.C. §2244(b)(1).

### iii.   Claims that could have been raised in prior petition

Under §2244(b)(2)(B)(i), a claim omitted from a prior petition is subject to

dismissal in a successive petition if the claim's factual predicate was known or

reasonably discoverable at the time.  See, *Babbitt v. Woodford*, 177 F. 3d 744, 746-

47 (9th Cir. 1999)(per curiam).  Thorp seems to believe that he is entitled to relief

by simply showing he recently obtained text messages and medical records he

believes are favorable to him, and that phone records may have not been turned

over by the prosecution.  If so, he is mistaken.

As a preliminary matter, the Court is not convinced that either the text

messages or phone records constitute *Brady* material.  Under *Brady*, the

prosecution may not suppress "evidence favorable to an accused…where the

evidence is material either to guilt or to punishment."  *Brady v. Maryland*, 373

8

U.S. 83, 85 (1963).  Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999)(internal quotation marks omitted).  "A 'reasonable probability' of a different result [exists] when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Thorp has not demonstrated that the prosecution or law enforcement actually possessed the phone records, nor has he shown a reasonable probability that disclosure of these records would have brought a different result.  Similarly, he has not shown the text messages were suppressed, or explained what "exculpatory" evidence would have been gleaned by their production  Thus, neither set of items appears to be "material" for *Brady* purposes.

Nevertheless, the factual predicate for Thorp's claim relative to the text messages and the phone records he claims he never received would have become known to him, during trial.  It was during trial that Thorp alleges the prosecution presented a misleading account of the messages or omitted the purportedly exculpatory text messages Thorp had sent.  It would also have been readily apparent that the phone records had not been produced in time for use at trial.

The same analysis applies to the medical records.  Certainly Thorp knew of his own medical condition, and whether or not he physically could have committed

the crime.  The fact that he failed to actually obtain a copy of his medical records

until a much later date, is unavailing.  Moreover, although he didn't raise the

precise claim he raises now in his prior petition, Thorp had certainly contemplated

the issue.  In his prior filings, Thorp discussed the medical issues he had stemming

from a workplace injury that occurred on September 19, 2005.  Thorp

acknowledged that he discussed these injuries, the medications he was on, and his

resulting physical limitations with his attorney.  Thorp and his attorney also

apparently discussed obtaining Thorp's medical records.  See, *Thorp v. Frink*, No.

CV-12-60-BLG-SEH-CSO (Doc. 10-2 at 5-6).

In any event, Thorp was obviously in a position to know of these potential

claims, and certainly had the ability to pursue them in his prior petition.  Thorp's

failure to do so demonstrates a lack of diligence on his part.  See, *Woratzeck v.*

*Stewart*, 188 F. 3d 648, 652 (successive petitioner raising a claim for

unconstitutional destruction of evidence did not exercise due diligence because he

knew of the possible destruction for years).   Because Thorp failed to act diligently

in his pursuit of these claims, they should be dismissed pursuant to

§2244(b)(2)(B)(i).

### iv.    Jordona England Recantation Claim

For the sake of argument, this Court will assume that under

§2244(b)(2)(B)(i), Thorp could show that the factual predicate for Jordona

10

England's alleged recantation claim could not have been previously discovered through the exercise of due diligence.  But Thorp still must demonstrate the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense.  28 U.S.C. §2244(b)(2)(B)(ii).  Thorp has made no such showing.

Moreover, even if this Court were to find that Thorp could carry his burden under the statute, this Court has no jurisdiction to hear his claim until Thorp obtains leave from the Ninth Circuit Court of Appeals to file a successive habeas petition as required by 28 U.S.C. § 2244(b)(3)(A).  See, *Burton v. Stewart*, 549 U.S. 147, 149 (2007) (per curiam).

## IV.   Conclusion

Thorp's petition should be dismissed in its entirety.  With the exception of the Jordona England recantation claim, the claims are all barred by AEDPA's restriction on second or successive petitions.  And unless and until Thorp receives authorization from the Ninth Circuit to file the claim related to England's recantation, this Court lacks jurisdiction to hear the claim.

## V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

11

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because there is no doubt this Court lacks jurisdiction and there is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (Doc. 1) should be **DISMISSED** for lack of jurisdiction

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Thorp may object to this Findings and Recommendation within 14

days.[1] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

_Thorp must immediately notify the Court of any change in his mailing address_ by filing a "Notice of Change of Address" under the appropriate cause number. Failure to do so may result in dismissal of his petition without notice to him.

DATED this 29th day of November, 2017.

_____
Timothy J. Cavan
United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Thorp is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.